ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSHUA K. STEAD

      Plaintiff,

                             File No. 2:19-cv-00231

v

                             HON. PAUL L. MALONEY

ZACHARY DROGOWSKI, JEFFREY
ROGERS, JOE WIATER, MICHIGAN
DEPARTMENT OF STATE POLICE,
CHIPPEWA COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF CHIPPEWA,

      Defendants.

---

Craig W. Elhart (P26369)
Elhart & Horvath, P.C.
Attorneys for Plaintiff
329 S. Union Street
Traverse City, MI 49684
(231) 946-2420
craig@ehlawtc.com

Gregory R. Grant (P68808)
Cummings, McClorey, Davis
& Acho, P.L.C.
Attorneys for Defendants
Wiater and Chippewa County
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888
ggrant@cmda-law.com

Mark E. Donnelly(P39281)
Adam R. De Bear (P80242)
MI Dep't of Attorney General
Assistant Attorneys General
Attorneys for Defendants
Drogowski, Rogers, and
Michigan State Police
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
donnellym@michigan.gov
debeara@michigan.gov

---

BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS WIATER
AND CHIPPEWA COUNTY'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)

## TABLE OF CONTENTS

STATEMENT OF QUESTIONS PRESENTED...................................................... ii

INDEX OF AUTHORITY.......................................................................... iii

STATEMENT OF FACTS........................................................................... 1

STANDARD OF REVIEW............................................................................ 3

ARGUMENT I

       Deputy Wiater agreeing to let Plaintiff
       drive his vehicle violated Plaintiff's
       Fourteenth Amendment due process rights
       under the state-created-danger doctrine............... 5

ARGUMENT II

       Chippewa County should be held vicariously
       liable as Deputy Wiater's affirmative acts
       violated Plaintiff's Fourteenth Amendement
       due process rights............................................ 10

CONCLUSION AND RELIEF REQUESTED................................................. 10

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

STATEMENT OF QUESTIONS PRESENTED

1.   Did Deputy Wiater violate Plaintiff's Fourteenth
     Amendment due process rights under the state-
     created-danger doctrine when he agreed to let
     Plaintiff drive his vehicle to a nearby church?

          Plaintiff answers: "Yes."

          Defendants answer: "No."

2.   Should Chippewa County be held liable when Deputy
     Wiater's affirmative acts violated Plaintiff's
     Fourteenth Amendment due process rights?

          Plaintiff answers: "Yes."

          Defendants answer: "No."

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

## INDEX OF AUTHORITY

Ashcroft v Iqbal, 556 US 662, 678; 129 S Ct 1937; 173 L Ed 2d 868, 884 (2009)

Baynes v. Cleland, 799 F.3d 600, 610 (6th Cir. 2015).

Bell Atl. Corp. v Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

DeShaney v. Winnebago Cnty Dep't of social Serv., 489 U.S. 189, 200 (1989).

Ewolski v. City of Brunswick, 287 F.3d 492, 509 (6th Cir. 2002)

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

## STATEMENT OF FACTS

Plaintiff's Complaint states on November 21, 2016, Plaintiff reportedly stole gasoline and two pint-sized bottles of liquor from Strongs General Store located in Eckerman, Michigan. At approximately 6:30 pm, Trooper Drogowski responded to a domestic disturbance call involving Plaintiff and his parents. He was informed that Plaintiff had entered his truck and used it to smash his parents' vehicles and a woodshed. Plaintiff then exited his truck, grabbed a sledgehammer, and used it to smash the front window of his parents' cabin. Plaintiff then picked up a broken shard of glass and made an apparent suicidal gesture by making a slashing motion towards his neck. When Trooper Drogowski and Deputy Wiater arrived, they were informed by Plaintiff's father that his son was "fucking crazy" and he "wanted charges pressed [against] him and to arrest him and wanted him out of here." Plaintiff's father informed Drogowski that his son was a meth addict, a crack addict, and was detoxing from methamphetamine.

Plaintiff then returned to his parents' residence, but remained in his vehicle in the driveway. Plaintiff's father stated that his son is fucking crazy, he is very strong, and that officers better get a lot of back up.

While parked in the driveway, Plaintiff had a hostile exchange with Drogowski before Plaintiff pulled away in his

1

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

truck. During their conversation, Plaintiff stated that "the only solution to the problem at hand would result in gunfire." Additionally, when Plaintiff was asked what the officers could do to help, Plaintiff told officer Wiater that he can shoot him now. Officers also noted that Plaintiff's vehicle only had one functioning headlight and both taillights were smashed, emitting only white light from the rear. Plaintiff refused to exit his vehicle while talking, but informed officers before he left that he was going to drive to a church parking lot located near his parents' cabin. According to officer Drogowski's report, both he and officer Wiater ". . .agreed to speak with the suspect further at the [church parking lot.]"

The officers followed Plaintiff to the nearby parking lot where Deputy Wiater spoke with Plaintiff for approximately five minutes. During this conversation, both officers determined that Plaintiff was not able to safely operate his vehicle at this time due to his emotional state and the possibility of intoxicants and/or medication in his system.

An extensive high-speed pursuit ensued where Plaintiff collided with police vehicles several times before exiting his truck with a chainsaw. After Plaintiff exited his truck, he can be seen and heard via dashcam footage starting a chainsaw and walking towards officer Wiater and Drogowski. Consequently, officer Drogowski fired his service weapon seven times at

2

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

Plaintiff, and Plaintiff was struck approximately three times and rendered incapacitated. Officer Wiater also fired his taser at Plaintiff.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citing *Papasan* v. *Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v Iqbal*, 556 US 662, 678; 129 S Ct 1937; 173 L Ed 2d 868, 884 (2009)

Two working principles underlie the court's  decision in *Twombly*. First, the tenet that a court must accept as true

3

all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. *Ashcroft v Iqbal*, 556 US 662, 678-79; 129 S Ct 1937; 173 L Ed 2d 868, 884 (2009).

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

ARGUMENT I

**Deputy Wiater is not entitled to qualified immunity as his affirmative acts constituted a state-created-danger in violation of Plaintiff's Fourteenth Amendment rights.**

Defendants' motion argues that Deputy Wiater is entitled to qualified immunity. Plaintiff disagrees.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

In deciding whether a government official is entitled to qualified immunity, courts must ask two questions. First, "viewing the facts in the light most favorable to the plaintiff," the court must determine whether "the plaintiff has shown that a constitutional violation has occurred." *Baynes v. Cleland,* 799 F.3d 600, 610 (6th Cir. 2015). Second, the court must decide whether the alleged constitutional right was clearly established at the time of the violation.

The Fourteenth Amendment's due process clause, which is the Constitutional Provision that underlies a "state-created danger claim," provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S.

Const. amend. XIV. The Sixth Circuit, citing *DeShaney v. Winnebago Cnty Dep't of social Serv.*, 489 U.S. 189, 200 (1989), acknowledged that "even in noncustodial settings, . . . state officials may violate the Due Process Clause when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way." *Ewolski v. City of Brunswick*, 287 F.3d 492, 509 (6th Cir. 2002)

To succeed on a state-created danger claim against a state official, a plaintiff must demonstrate the following:

> (1) an affirmative act by the governmental actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person;
>
> (2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and
>
> (3) the governmental actor had the requisite degree of culpability.

Defendants' motion argues that Deputy Wiater is entitled to qualified immunity. Plaintiff disagrees, and maintains that the following demonstrates that Deputy Wiater acted affirmatively by negotiating with Plaintiff, and agreeing to let Plaintiff drive his own vehicle, despite knowledge that he was possibly intoxicated and concerns with Plaintiff's ability to drive.

Defendants argue that Plaintiff's Complaint fails to demonstrate a deprivation of Plaintiff's constitutional rights,

and that there is no binding precedent that would place Deputy Wiater on notice that his conduct was unlawful. However, Plaintiff maintains that his Fourteenth Amendment rights were violated by Deputy Wiater's actions.

Plaintiff's Fourteenth Amendment due process rights were violated under the state-created-danger doctrine. By negotiating and affirming that Plaintiff may drive away from his parents' home to another meeting spot, Deputy Wiater increased the risk that Plaintiff would be exposed to injurious conduct in violation of his due process rights. Deputy Wiater owed Plaintiff a special duty and should have removed him from his vehicle, rather than affirmatively allowing him to drive to the nearby church, because he had reason to believe Plaintiff had a diminished mental state and was intoxicated.

Based on the following observations from Deputy Wiater's Incident Report, attached hereto as **Exhibit A**, Deputy Wiater was aware that allowing Plaintiff to continue to drive would increase his risk of injury. Page one of his report indicates that before arriving to Plaintiff's parents' home, he was advised to turn off his overhead lights and sirens because Plaintiff had already smashed vehicles and "he might aim for my patrol vehicle when he seen the overhead lights activated." Page two indicates that Plaintiff's father stated with a loud emotional voice that his son is fucking crazy, and "look at the

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

fucking damage he did." Plaintiff's father also stated that his son is fucking crazy, he wanted charges pressed on him, and to arrest him. Page three of his incident report also indicates that Plaintiff's mother also told Wiater that they were very frightened of their son, and that he is tall, strong and out of control, and he can't stay with them any longer. When Deputy Wiater spoke with Plaintiff on the phone, Plaintiff stated that things were going off in his mind and that he would come back to the residence but would not get out of the vehicle.

When Plaintiff returned, Deputy Wiater asked Plaintiff if he was coming out of the vehicle to talk and Plaintiff stated that he was fucking not. Deputy Wiater asked Plaintiff what he could do to help him, and Plaintiff stated that "I could shoot him now." Page five of his report states that Plaintiff started to get worked up again and stated that he was going up to the corner to the church and we could talk there. Plaintiff stated that "no one was going to put stop sticks behind his vehicle." Deputy Wiater asked Plaintiff not to go and Plaintiff put his pickup in reverse and sped away from the residence. Deputy Wiater continued to negotiate at the church with Plaintiff until he eventually left the parking lot.

Defendants had multiple opportunities to seize, arrest, and eliminate the ongoing threat Plaintiff posed before the pursuit ever occurred. Defendants were aware that Plaintiff

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

8

had already used his truck to smash his parents' vehicles, but chose not to block Plaintiff's vehicle in at his parents' home, nor attempt to arrest Plaintiff at his parents' home. After agreeing to meet with Plaintiff a second time at the church parking lot, Defendants had another opportunity to block his vehicle or attempt to immobilize it somehow. However, there was never any effort by Defendants to arrest Plaintiff, nor immobilize him after he had already stolen, and presumably consumed, two pint-sized bottles of alcohol.

It is unknown at this time if Deputy Wiater had additional training on how to deal with citizens experiencing a mental health crisis, but evidence suggests that he was lacking in confidence with respect to his ability to de-escalate the situation. For example, when Plaintiff left his parents' cabin in his vehicle, Deputy Wiater can be heard via Trooper Drogowski's dashcam video at 7:00:00 pm saying "I figured we wait for Rogers to get here. He's probably a little more experienced."

It is likely the police pursuit served to fuel Plaintiff's aggravation and consequently created a danger for Plaintiff, the police, and public beyond the inherent dangerousness of police pursuits. Additionally, the affirmative act of agreeing to let Plaintiff leave his parents' driveway likely caused the police pursuit and ultimate shooting of

Plaintiff. The officers were not simply returning Plaintiff back to the same dangers that existed, but rather increased Plaintiff's risk that he would be exposed to dangerous conduct by agreeing to let him continue to drive his vehicle in a paranoid and intoxicated state.

### ARGUMENT II

**Chippewa County is not entitled to dismissal as Deputy Wiater's affirmative acts violated Plaintiff's Fourteenth Amendment due process rights.**

Defendant Chippewa County maintains that they cannot be held liable absent an underlying constitutional violation by its officers. Defendant argues that because there was no constitutional violation by Deputy Wiater, there can be no valid cause of action against Chippewa County. Plaintiff disagrees, and for the reasons stated above, maintains that Deputy Wiater violated Plaintiff's Fourteenth Amendment due process rights.

### CONCLUSION AND RELIEF REQUESTED

For the above-stated reasons, Plaintiff Joshua K. Stead respectfully requests that this Court deny Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

ELHART & HORVATH, P.C. - Attorneys at Law - 329 South Union, Traverse City, MI 49684 - Telephone (231) 946-2420 - Facsimile (231) 946-0156

and draw the reasonable inference that Defendants Wiater and Chippewa County are liable for the misconduct alleged.

Respectfully submitted,

Dated: February 20, 2020          ELHART & HORVATH, P.C.


/s/ Craig W. Elhart
Craig W. Elhart (P26369)
Attorneys for Plaintiff
329 South Union Street
Traverse City, MI 49684
Telephone: (231) 946-2420


## CERTIFICATE OF SERVICE

I certify that on February 20, 2020, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and certify that I have mailed by United States Postal Service the paper to the following non-EFC participants: N/A


/s/ Craig W. Elhart
Craig W. Elhart (P26369)

| Page 1 of 9 | **CHIPPEWA COUNTY SHERIFF** | Report 16-0042026 |
|---|---|---|
| | Incident Report | Date  12/06/16 |
| | 325 Court Street | Time  12:33 AM |
| Phone: (906) 635-6355 | Sault Ste Marie MI 49783 | |

---

Narrative:

**REPORTS:       ATTEMPTED MURDER**

**INFORMATION:** U/deputy was dispatched to some kind of domestic dispute at 29610 w. Hungry Hollow in Strong's near the church off M-28. Central advised that the father Ken STEAD stated that his son Josh had just smashed into the vehicles at the residence and had also broke windows at the residence.

Central advised that a fire arm was at the residence and central advised U/deputy that they were trying to get them to secure the fire arm.

**DATE AND TIME:** The above incident did occur on November 21st 2016 at approx. 1830 hrs.

**VENUE:** The above incident did occur at the STEAD residence located at 29610 w. Hungry Hollow in Strong's, the venue then continued onto M-28 for approx. 5 miles west toward Hulbert, in the County of Chippewa, in the State of Michigan.

**DEPUTY LOCATION:** U/deputy was in the Kinross area on patrol when the call came in. U/deputy advised my location of the B&D and I-75 and stated that I was in-route.

**LIGHTS AND SIRENS:** U/deputy was in-route with lights and sirens activated. U/deputy travel was I-75 north to M-28 then west onto M-28 to Hungry Hollow residence.

**CENTRAL UPDATE:** U/deputy was advised that central was able to get them to secure the firearm and that Josh had left the residence in a white Dodge pickup truck with only one head light working. Unknown location of travel.

**CENTRAL UPDATE:** U/deputy was advised that Josh had just left the gas station in Strong's and was headed east toward the Sault. Central advised that he had purchased approx. $53.00 in gas.

**DEPUTY UPDATE:** U/deputy did contact central dispatch and advised that I was not running code being Josh had left the scene. U/deputy advised that I had turned off my overhead lights and siren. U/deputy thought since Josh had smashed vehicles at his residence he might aim for my patrol vehicle when he seen the overhead lights activated.

**PLAINTIFF'S EXHIBIT**

A

PENGAD 800-631-6989

| Page 2 of 9 | **CHIPPEWA COUNTY SHERIFF** | Report 16-0042026 |
|---|---|---|
| | Incident Report | Date  12/06/16 |
| | 325 Court Street | Time .  12:33 AM |
| Phone:(906)635-6355 | Sault Ste Marie MI 49783 | |

Narrative:

**CONTACT WITH STATE POLICE UNITS:** U/deputy advised the State police unit headed to the scene also about his lights. 8233 Trooper Rogers asked U/deputy where his location was and I advised that I had passed Ranger road and still no sign of the white Dodge. 8233 stated that Josh could have gone north on Salt point road and that he was headed to lakeshore drive to look for the vehicle.

U/deputy also advised that Josh could have went to the south onto Sullivan creek rd.

**HUNGRY HOLLOW:** U/deputy advised that we were just turning onto Hungry Hollow and did not see the white in color Dodge pickup.

**ON SCENE:** U/Deputy did observe that a male subject was on the other side of some trees as I pulled in I asked if he was the caller and he stated that he was.

**DEPUTY OBSERVATIONS:** U/deputy immediately observed that the vehicles in the drive way were pushed together and a large amount of damage had occurred to the rear of the first vehicle I saw. U/deputy also observed that a small roof over a cut and stacked wood pile was pushed over and deep tire tracks were imprinted in the gravel and mud.

**CONTACT WITH CALLER:** U/deputy observed that the male caller and father of Josh was very upset and scared. U/deputy identified myself and asked him his name and he stated that it was Ken.

**KEN STEAD VERBAL STATEMENT:** Ken stated with a loud emotional voice that his son is fucking crazy. Ken stated look at the fucking damage he did. Ken stated that he had smashed into the wood pile and both of his vehicles in the driveway. Ken also stated that Josh also had smashed windows in the house. Ken stated that his son is fucking crazy and he wanted charges pressed on him and to arrest him and wanted him out of here.

**DEPUTY OBSERVATIONS OF KEN AND OF THE SCENE:** U/deputy looked around the residence and saw the broken windows and the damage to the both vehicles in the drive way. U/Deputy observed that each vehicle was struck multiple times and with force. U/deputy observed the tire impressions had spun out gravel and dirt in multiple directions as Josh struck the vehicles from multiple directions.

| Page 3 of 9 | CHIPPEWA COUNTY SHERIFF | Report 16-0042026 |
|---|---|---|
| | Incident Report | Date 12/06/16 |
| | 325 Court Street | Time 12:33 AM |
| Phone: (906) 635-6355 | Sault Ste Marie MI 49783 | |

**Narrative:**

Ken stated that he did bring out his rifle and discharged it into the woods to scare Josh away. Ken stated that he never pointed the rifle at Josh. KEN continued to look out through the trees toward the roadway as if Josh might come back in a intense and scared demeanor.

U/deputy walked up onto the porch to get information from Ken as he kept looking out toward the road as to see if Josh was coming back. Ken stated that his son is a meth addict, crack addict and whatever drugs he could get. Ken stated that he was just in the hospital on Thursday and got a couple injections of Fentanyl as he gestured putting a needle in his arm to explain to me.

Ken continued to stand close to the front door and with the front door just opened about a couple inches as he looked beyond me into the woods as if he was sure Josh was hiding somewhere in the area.

**CONTACT WITH TAMMY STEAD:** While on the porch with Ken his wife Tammy came out with a very loud and nervous or scared tone stating that he needs to be gone and that they were very frightened of their son. Tammy stated that she does not know what he will do next and what they could do. Tammy stated that he is tall, strong and out of control and he can't stay with them any longer.

**CELL PHONE CALL:** While on the front porch with Ken and Tammy Ken answered his cell phone and started yelling at Josh and telling him that the police was here and that he fucked up big time and why did he smash up the vehicles and what the hell was wrong with him.

**U/DEPUTY ASKED FOR THE PHONE:** U/Deputy told Ken that he was not making it any better to scream and curse at Josh when he is already in a rage.

U/deputy asked Ken to ask Josh if he would speak to me. Ken handed me the phone and I identified myself and Josh asked me if I was at the residence. I explained to Josh that I was. I also stated to Josh that another officer was with me.

I asked Josh if I could help him and he stated that I could not and that things were going off in his mind and that he would come back to the residence but would not get out of the vehicle.

**CHIPPEWA COUNTY SHERIFF**          Report  16-0042026
                               Incident Report          Date   12/06/16
                               325 Court Street          Time   12:33 AM
Phone:(906)635-6355    Sault Ste Marie MI 49783

---

Narrative:

U/deputy explained to Josh that I was not here to arrest him and that all I
wanted was for every to stay safe and that we could help if he let us. I
explained to josh that I wanted him to come in slowly and not to hit our
patrol vehicles.

**RE-CONTACT WITH KEN AND TAMMY:** U/deputy handed Ken back the cell phone and
explained that josh was coming back to the residence.

I explained to Ken and Tammy that I was not going to go after Josh to arrest
him if he would let us help him. I stated to Ken that if he wanted to press
charges against his son that I would take pictures and statements of the
incident and I would seek a warrant at a later time if his son Josh would go
to the hospital to talk with someone and Ken stated that was fine.

**CONTACT WITH 8233:** U/deputy advised 8232 to contact 8233 and to have him
start this way that Josh was headed back to the residence.

**JOSH VEHICLE:** While on the porch still with Ken and Tammy Ken heard the
vehicle and said it's him. Ken stated that he was going inside with his wife
locking the fucking door.

Ken in a loud voice through the front door of his residence stated that he
is fucking crazy and he is very strong and that we better get a lot of back
up.

**JOSH AT RESIDENCE:** U/deputy walked down the front steps and was able to see
that the vehicle pulling into the drive way was white in color Dodge pickup
vehicle with one head light. As the vehicle parked behind my patrol unit I
observed that the white in color dodge had front end damage and that the
vehicle was occupied by Josh as the driver.

**CONTACT WITH JOSH:** U/deputy was standing on the drive way between the
residence and the two damaged vehicles. U/deputy asked Josh if he was coming
out of the vehicle to talk with us and Josh stated that he was fucking not.
Josh stated that he was talking through his window while sill seated behind
the wheel and the vehicle running. Josh lowered his window approx. 4 to 5
inches.

I asked Josh if I could come a little closer to his vehicle and he stated
that about four more steps. U/deputy walked closer to Josh vehicle them four
steps and asked if he could hear me and Josh stated what in the fuck did I
want. I explained to Josh that I wasn't here to arrest him and that was the

Page  5 of 9                **CHIPPEWA COUNTY SHERIFF**              Report  16-0042026
                                    Incident Report                    Date   12/06/16
                                    325 Court Street                   Time   12:33 AM
Phone:(906)635-6355        Sault Ste Marie MI 49783

---

**Narrative:**

truth. I explained that I was here to help if I could and Josh asked if I
was a police officer and I stated that I was. Josh then asked me with whom
and I told him with the Sheriff's department. Josh asked me if I was a State
Trooper and I said no I'm with the Sheriff's and Josh said the fucking State
police arrested him and put him in prison.

U/Deputy not trying to upset Josh asked him what we could do to help him.
Josh stated that I could shoot him now. U/deputy told Josh that was not
happening. I asked Josh if he would go with me to the hospital to talk with
someone and Josh said that don't do anything and that he was not going with
us.

U/deputy asked Josh if we could call and ambulance for him and that we would
follow them to Newberry hospital and Josh stated he was not going with us or
an ambulance.

U/deputy asked Josh if he would go with his parents to the hospital and he
said he would. I asked Josh to give me a few minutes and I would go and ask
his parents to assist us.

**RE-CONTACT WITH PARENTS:** U/deputy walked up the front steps and knocked on
the front door. U/deputy was able to make contact with Ken and Tammy and
advised them of the situation and that Josh would go to the hospital if they
would drive him. Ken stated that he was not leaving the residence and would
not help us at all and to look at his fucking vehicles and shut the front
door on me and locked it.

**RE-CONTACT WITH JOSH:** U/deputy walked back toward Josh vehicle and explained
that his parents were scared and would not go with us and Josh stated that
how do you think I feel. U/Deputy continued to try and get Josh to go with
me and he said no.

Josh then started to get worked up again and stated that he was going up to
the corner to the church and we could talk there. Josh stated that no one
was going to put stop sticks behind his vehicle. I asked Josh not to go and
Josh put the pickup in reverse and sped out spinning dirt forward and took
off from the residence.

**CONTACT AT CHURCH:** U/deputy along with MSP Drogowski (8232) went up to meet
with Josh at the church located at the corner of M-28 and W. Hungry Hollow.

Page  6 of 9              **CHIPPEWA COUNTY SHERIFF**         Report 16-0042026
                              Incident Report            Date  12/06/16
                              325 Court Street           Time   12:33 AM
Phone:(906)635-6355       Sault Ste Marie MI 49783

---

**Narrative:**

U/Deputy observed head lights to the east on the side of the roadway which
was 8233 not far from the church. U/deputy observed Josh pickup facing the
east along the side of M-28.

U/deputy parked his patrol vehicle got out and walked toward Josh to
continue talking with him. Again Josh lowered his window and stated he would
go to Newberry hospital and that he would drive himself. I explained that I
would just call an ambulance and we would follow or he could go with me.

Josh stated that he was going and took off spinning his tires and kicking
gravel as he left the church parking lot and turned and headed west onto M-
28.

U/deputy ran back to my patrol vehicle and started to follow 8232 as he now
had the lead and was behind Josh. U/deputy observed that our speed continued
to increase and had reached up to and over a hundred miles per hour.

**8232:** U/deputy was contacted by 8232 that he was activating his overhead
lights to try and get Josh to pull over as he was out of control crossing
over the centerline into the wrong lane of travel still at high speeds.

As we continued behind Josh 8232 asked about the PIT maneuver and I
responded that our office does not allow us to use the maneuver. 8232 stated
that he had not been certified in the procedure also and 8233 stated that he
would take the lead. U/deputy allowed for 8233 to pass and he did take the
lead over 8232.

While traveling west on M-28 U/deputy observed that Josh pickup was crossing
back and forth over the centerline all the way into the shoulder of the
opposite lane of travel headed west.

**CENTRAL DISPATCH:** U/deputy contacted central as Josh just disregarded the 4
way light and stop at the M-123 M-28 intersection at speeds of a hundred.

**HEADED WEST STILL M-28:** U/deputy was now behind 8232 as we continued to
follow Josh vehicle. While in pursuit U/deputy observed break lights and
without hitting 8232 veered to the left and heard a loud crash and observed
the white pickup truck rear end up in the air headed to the white fog line
in the wrong way of travel.

Page  7 of 9        **CHIPPEWA COUNTY SHERIFF**      Report 16-0042026
                    Incident Report            Date    12/06/16
                    325 Court Street         Time     12:33 AM
Phone:(906)635-6350    Sault Ste Marie MI 49783

---

**Narrative:**

U/deputy then observed the white pickup disappear in front of 8233 and we were in pursuit again. As we continued I observed vehicle parts and debris on the road way that I traveled over when continuing.

U/deputy recalls 8233 saying that the vehicle had slowed and then I observed break lights again and 8232 going towards the right lane and I stayed in the center. U/deputy then was able to see that 8233 had made contact with the white pickup again and that it was off the roadway on the north side of the shoulder facing in the south east direction.

**AVOIDED CONTACT WITH PICKUP:** U/deputy was just coming to a stop when I observed that the pickup truck had just took off from the shoulder and was facing my patrol unit. U/deputy then observed the pickup coming toward my patrol vehicle head on. U/deputy put the patrol vehicle in reverse and as the pickup truck was just about to make contact with my vehicle I turned the wheel and observed the white pickup make a sudden turn towards me as if he was going to ram my vehicle and then turned and headed east now onto M-28.

U/deputy now in pursuit of the pickup observed that it had turned to the north up the road a bit into a drive way area that looked as if it was a dead end drive. U/deputy stopped on M-28 and shinned my spot light into the drive way area.

U/deputy heard 8233 asking me where he went: 8233 then asked me again as I tried to radio him I stated that he went into this drive way to the north where my spot light was pointed and I observed that 8233 then pulling in slowly as I started into the drive with him I immediately saw a headlight coming fast out of the drive way and then saw 8233 reverse lights come on and I immediately put my patrol vehicle in reverse and I heard a loud crash and could see that 8233 vehicle front end was headed toward my vehicle just missing my driver's door.

**VEHICLE EXITED:** U/Deputy then exited my patrol vehicle and ran to the front of my patrol vehicle and could see that the white pickup was facing in my direction and it had been disabled. U/Deputy drew his service weapon and with loud verbal commands yelled that I wanted to see his hands. U/deputy continued to use loud verbal commands to show me his hands.

**SAFETY OF 8233:** U/deputy while still yelling verbal commands to Josh was also concerned that 8233 was too close to Josh and that I did not know how 8233 was. U/Deputy while keeping an eye on the white pickup observed that

| Page  8 of 9 | **CHIPPEWA COUNTY SHERIFF** | Report 16-0042026 |
|---|---|---|
| | Incident Report | Date  12/06/16 |
| | 325 Court Street | Time   12:33 AM |
| Phone:(906)635-6355 | Sault Ste Marie MI 49783 | |

**Narrative:**

Josh had leaned over to the passenger side of the vehicle and then I heard a muffled noise. This muffled sound I thought was Josh trying to start his vehicle again U/deputy heard the muffle sound approx. 3 times.

U/deputy still using loud verbal commands then saw the driver side door of the white pickup open and josh stepped out and had a chain saw in his hands. U/deputy observed as Josh took the chain saw and with one pull started the fully functional saw with spinning chain.

**TASER:** U/deputy removed my Taser from its holster and placed the red laser light on his chest and while yelling commands to drop it I deployed my Taser.

U/Deputy did not know if it effected Josh with his heavy brown in color cart hart jacket and I dropped the Taser and pointed my service weapon and as Josh started quickly towards 8232 and myself I heard shots fired.

**THREAT DOWN:** U/deputy observed that Josh had dropped to the road way and the chain saw fell to the ground and was still running. U/deputy then cautiously went over to the chain saw and tossed it to the side of the road as it continued to run.

**SUBJECT CUFFED:** U/deputy along with 8233 and 8232 was able to put cuffs on Josh and then called for EMS.

**MEDICAL ASSISTANCE:** U/deputy along with 8232 could see that Josh had sustained injuries and U/deputy did grab a issued first aid bag along with a secondary bag to assist with Josh wounds. U/deputy was able to put large unused sterile compression pads on the most severe of Josh wounds.

**CUFFS REMOVED:** U/deputy while trying to keep Josh talking and staying awake heard Josh ask to remove the cuffs and I did knowing that he was not a threat at that time.

**ASSISTANCE:** U/deputy was not sure who all helped with the fist aide to Josh but other officers from other agencies and including Hulbert EMS took over first aide.

**PROTECT OTHER CRIME SCENE AREAS:** U/deputy directed other agencies that were on scene to assist to go back east to where the original collision between

**CHIPPEWA COUNTY SHERIFF**
Incident Report
325 Court Street
Phone: (906) 635-6355          Sault Ste Marie MI 49783

Report 16-0042026
Date   12/06/16
Time   12:33 AM

---

Narrative:

8233 and Josh pickup first made contact and to secure it from other traffic driving through it. U/deputy also asked another agency to block off the area where 8233 and Josh vehicle went off the roadway after 8233 PIT Josh vehicle off the road.

**CONTACT BY SHERIFF:** U/deputy was contacted by the Sheriff to confirm our safety and to keep all vehicles and debris where it lied.

**FOP REP:** U/deputy was met by the Sheriff and my union representative and was driven home.

**TASER:** U/deputy was asked to turn over my Taser to the Sheriff's department being it was deployed.

**PATROL UNIT:** U/deputy was told to leave my patrol vehicle on scene as it was part of the incident.

**FIRST AIDE KITS:** U/deputy was told to leave my emergency response first aide kits at the scene as they were.

**OFF DUTY:** U/deputy was placed on administrative leave till further notice.